United States Courts
Southern District of Texas
FILED

JUL 30 2026

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

**JOHN E. HALL,**

Plaintiff,

v.

CITY OF HOUSTON; JOHN DOE HOUSTON POLICE DEPARTMENT INTERNAL AFFAIRS OFFICERS 1-5, in their individual capacities; NATIONAL AUTO GROUP, LLC; MOHAMMED ELISSA, also known as ELISSA MOHAMMED; and CREDIT ACCEPTANCE CORPORATION,

**Defendants.**

**CIVIL ACTION NO.**

**[CASE NUMBER UNKNOWN]**

**JURY DEMANDED**

26 CV 6143

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, AND JURY DEMAND**

Plaintiff John E. Hall, proceeding pro se, files this Original Complaint against the City of Houston, presently unidentified Houston Police Department Internal Affairs officers, National Auto Group, LLC, Mohammed Elissa also known as Elissa Mohammed, and Credit Acceptance Corporation, and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from an alleged retaliatory joint operation between Houston Police Department Internal Affairs personnel and private automobile-finance actors that interfered with Plaintiff's attempted vehicle purchase, deprived him of a one-thousand-dollar payment, caused a materially false retail installment contract to be created and enforced, and placed an approximately sixteen-thousand-five-hundred-dollar repossession-related tradeline on his consumer credit reports.

2. Plaintiff alleges that the governmental Defendants targeted him because he had exercised First Amendment rights by filing civil-rights lawsuits, complaints, records requests, and public allegations concerning police and governmental misconduct.

3. Plaintiff does not assert a freestanding constitutional right to compel a criminal investigation. His constitutional claims concern intentional retaliation, selective denial of police services for an improper purpose, discriminatory treatment, and affirmative joint action by police officers with private parties.

4. The private Defendants are sued under federal civil-rights law only to the extent they knowingly agreed with, acted jointly with, or became willful participants with state actors in the challenged conduct. National Auto Group and Mohammed Elissa remain in this action for those federal joint-action claims, but Plaintiff reserves the conversion, breach-of-contract, common-law fraud, and unjust-enrichment causes of action against them to the pending justice-court case. Credit Acceptance is also sued independently under the Texas DTPA and for declaratory, rescission, cancellation, and Holder Rule relief based on its own conduct and its status as holder or assignee.

5. The City of Houston is sued under 42 U.S.C. Section 1983 for acts caused by an official policy, persistent custom, ratification, or deliberate indifference. The City is not sued on a respondeat superior theory.

## II. JURISDICTION AND VENUE

6. This Court has federal-question jurisdiction under 28 U.S.C. Sections 1331 and 1343 because Plaintiff asserts claims under the First and Fourteenth Amendments and 42 U.S.C. Sections 1983 and 1985.

7. This Court has supplemental jurisdiction under 28 U.S.C. Section 1367 over the Texas Deceptive Trade Practices Act claim against Credit Acceptance, the related declaratory, rescission, cancellation, and Holder Rule issues, and other state-law questions necessary to resolve the same case or controversy.

8. Declaratory relief is authorized by 28 U.S.C. Sections 2201 and 2202. Injunctive relief is available under the Court's equitable authority and 42 U.S.C. Section 1983.

9. Venue is proper in this District under 28 U.S.C. Section 1391 because Plaintiff resides in this District, the City of Houston is located here, National Auto Group conducted the transaction here, and a substantial part of the events and injuries occurred here.

## III. PARTIES

10. Plaintiff John E. Hall is an African-American resident of Spring, Harris County, Texas, and a retired Houston Police Department lieutenant. Plaintiff has repeatedly petitioned courts and governmental agencies concerning alleged police, records, and judicial misconduct.

11. Defendant City of Houston is a Texas home-rule municipality responsible for the Houston Police Department. The City may be served through its Mayor, City Secretary, or other officer authorized by law.

12. Defendants John Doe HPD Internal Affairs Officers 1-5 are presently unidentified officers, investigators, supervisors, or employees who allegedly monitored Plaintiff's communications, contacted or influenced the private Defendants, interfered with the refund of Plaintiff's money, selectively declined or obstructed investigation of Plaintiff's complaint, and concealed their identities or actions. They are sued in their individual capacities.

13. Plaintiff cannot presently identify the Doe officers because the relevant communications, internal logs, telephone records, police IAD investigative records, and dealer contacts are controlled by Defendants. Plaintiff will seek early discovery and amend promptly after identification.

14. Defendant National Auto Group, LLC is an automobile dealer that conducted business in Harris County, Texas, and participated in the vehicle transaction at issue.

15. Defendant Mohammed Elissa, also known as Elissa Mohammed, was a manager, owner, agent, or representative of National Auto Group who personally received Plaintiff's payment, participated in preparing or approving the disputed contract, refused the requested refund, pocketed the one thousand dollar down payment amount, and communicated with other Defendants.

16. Defendant Credit Acceptance Corporation is a finance company that accepted or acquired the retail installment contract, funded the dealer under its Portfolio Program or a materially similar dealer program, administered the alleged account, repossession status, and credit reporting, and continued to assert rights under the disputed contract after receiving notice of fraud.

## IV. PRIOR FEDERAL ACTION, NONSERVICE, PENDING JUSTICE-COURT ACTION, AND LATER-ACCRUING CONDUCT

17. Plaintiff previously named National Auto Group, Mohammed Elissa, Credit Acceptance Corporation, the City of Houston, and an unknown HPD Internal Affairs investigator in Civil Action No. 4:24-cv-02882 in this Court.

18. That action was dismissed sua sponte on February 20, 2025, before National Auto Group and Mohammed Elissa were served and before Credit Acceptance Corporation's service was completed. Plaintiff alleges that those unserved Defendants did not appear or otherwise submit to personal jurisdiction before dismissal.

19. An individual ordinarily does not become a party merely by being named; valid service or a voluntary appearance is required. Chance Clyce v. Nadine Butler, No. 18-11189 (5th Cir. Nov. 16, 2020). Plaintiff pleads nonservice to preserve the jurisdictional and claim-preclusion consequences of that fact.

20. Plaintiff also has a pending small-claims action in the Justice Court of Harris County, Texas, Precinct 4, Place 1, Cause No. 24410034420, against National Auto Group, LLC and Mohammed Elissa. That action asserts conversion, breach of contract, common-law fraud, and unjust enrichment arising from the one-thousand-dollar payment and the vehicle transaction.

21. The justice-court action does not name the City of Houston, the Doe HPD officers, or Credit Acceptance Corporation and does not adjudicate the federal retaliation, equal-protection, joint-action, municipal-liability, or Credit Acceptance post-notice DTPA claims pleaded here. Plaintiff discloses the pending case and does not seek duplicate recovery.

22. This action is limited to distinct federal constitutional claims, Credit Acceptance's direct and derivative consumer liability, and independently actionable conduct or injuries that continued or accrued after the prior federal dismissal, including continued enforcement and reporting after later statutory notices and continuing concealment of the Doe officers' identities and communications. A claim arising after a prior judgment is not barred merely because it involves related parties or facts. American Home Assurance Co. v. Chevron, USA, Inc., 400 F.3d 265 (5th Cir. 2005).

## V. FACTUAL ALLEGATIONS

23. On or about August 28, 2024, Plaintiff went to National Auto Group, 2218 North Loop W. Houston, Tx. The registered tax business address is 6427 Washington Ave., Houston, Tx. 77007. This was a dealership licensing violation.

24. Plaintiff informed the dealership that he had only one thousand dollars available for a down payment.

25. David the salesman said he had an excellent vehicle with no problems. Plaintiff drove the vehicle around the block. Mr. Elissa Mohammed also said that the vehicle had no problems. Mr. Elissa Mohammed said give me your one thousand dollars. Mr. Hall gave Mr. Ellison Mohammed his bank card which he debited one thousand dollars. David the salesman wrote up the contract down payment as $2,500.00 dollars. Plaintiff asked Mr. Elissa Mohammed about the two thousand dollars on the contract and Mr. Mohammed stated that he was trying to help the plaintiff out. Hall claimed that as a police officer that he didn't want to participate in anything that appeared like fraud. Mr. Mohammed claimed he was trying to help me out. Mr. Mohammed told me to go ahead and drive the vehicle home. I still was unsure if Mr Mohammed was trying to entrap me. I took the freeway home and the vehicle started vibrating badly. I stopped. I called

Mr. Mohammed, who informed me that they had left and to bring the vehicle back tomorrow. I returned the vehicle the next day and called a friend or uber driver. The vehicle was left for repairs for seven days.

26. Plaintiff later learned that the payment was routed or credited to an account identified as Auto Complete Car Care rather than transparently applied as the down payment.

27. Plaintiff alleges that the receiving business name was not a properly registered entity authorized to conduct the represented transaction, subject to confirmation through official business records.

28. The retail installment sales contract stated that Plaintiff made a down payment of $2, 500.00 dollars, although Plaintiff paid only one thousand dollars and never authorized the insertion of an additional one thousand dollars.

29. The false down-payment figure was material because it altered the apparent consideration, loan-to-value calculation, dealer proceeds, underwriting information, and appearance of a legitimate contract with Credit Acceptance.

30. Plaintiff did not knowingly agree to provide a $2,500.00 down payment and did not authorize any person to represent that he had done so.

31. Plaintiff explained to Mr. Mohammed that the vehicle's check-engine light or warning system indicated a mechanical problem.

32. National Auto Group's personnel continued to say that the vehicle had been repaired, was in proper operating condition, or would be repaired, despite facts indicating otherwise.

33. Plaintiff also alleges that Defendants failed to disclose a material manufacturer safety recall, odometer irregularity, or other condition affecting the vehicle's safety and value.

34. Plaintiff informed David and Mr. Mohammed that he didn't want to be involved in fraud and that the vehicle was unsafe to operate.

35. Plaintiff rejected the transaction and requested rescission and the return of his one thousand dollar payment.

36. Plaintiff incurred transportation expenses, including rideshare expenses, because the vehicle was not safely usable and the transaction failed.

37. Mohammed Elissa refused to return Plaintiff's one-thousand-dollar payment.

38. Mohammed Elissa stated, in substance, that the vehicle would be left at a nearby Denny's restaurant with the keys under a mat, even though Plaintiff had rejected the transaction and did not agree to accept the vehicle based on fraud.

39. Plaintiff alleges that he never accepted delivery of the vehicle as contemplated by the written contract and never agreed that abandonment at a restaurant would constitute lawful delivery.

40. National Auto Group transmitted or caused the disputed contract and credit application to be transmitted electronically to Credit Acceptance.

41. Credit Acceptance approved, accepted, purchased, or administered the transaction based on documents that facially represented a $2,500.00 down payment. Plaintiff notified Credit Acceptance Corp. of the one thousand dollars that the Dealer converted.

42. Credit Acceptance thereafter treated the transaction as an enforceable consumer credit contract and caused the vehicle to be characterized as repossessed or voluntarily surrendered.

43. Credit Acceptance furnished or caused the furnishing of a derogatory repossession-related tradeline in an amount of approximately sixteen thousand five hundred dollars, or another amount to be established through discovery, on Plaintiff's consumer credit reports.

44. The tradeline remained for more than two years and impaired Plaintiff's credit standing, access to financing, ability to use home equity or consolidate debt, and financial reputation.

45. Plaintiff repeatedly disputed the transaction to Experian which was never deleted. Plaintiff informed Credit Acceptance that the contract contained a false down-payment figure, that the vehicle was defective and rejected, that the one-thousand-dollar payment had not been refunded, and that the dealership's contract was fraudulent.

46. Credit Acceptance had access to the contract, dealer funding records, underwriting data, transaction notes, call recordings, and dealer communications necessary to determine the actual down payment and circumstances of delivery and rejection.

47. Credit Acceptance did not rescind the transaction, refund the payment, cancel the alleged balance, or remove the repossession reporting after receiving Plaintiff's complaints.

48. On July 29, 2026, plaintiff discovered that Credit Acceptance's official Portfolio Program disclosure states, in substance, that the combination of the company's advance and the consumer's down payment typically provides the dealer with a cash profit at the time of sale.

49. Under that program, the dealer receives the consumer's down payment and a separate advance from Credit Acceptance, and may later receive dealer holdback after Credit Acceptance recovers designated amounts and costs. See attached Exhibits.

50. The Portfolio Program is not alleged to be unlawful merely because it provides dealer financing. Plaintiff alleges that it supplied a direct financial motive and structure under which Elissa Mohammed and National Auto Group could falsify the sales contract and retain the one-thousand-dollar payment while receiving the contract's $2,500.00 dollars granted to them by Credit Acceptance..

51. Transaction-specific discovery is required to determine the amount of the dealer advance, the actual dealer funding statement, the dealer servicing agreement, the source and application of every payment, and any dealer holdback.

52. Before and during the vehicle transaction, Plaintiff was actively litigating and petitioning against the City of Houston and HPD personnel concerning alleged police retaliation, records manipulation, surveillance, and misconduct.

53. Plaintiff alleges on information (May 31, 2018) and belief that one or more Doe HPD Internal Affairs officers monitored, intercepted, obtained, or exploited illegal pen register and or wiretap information concerning Plaintiff's telephone calls or communications without lawful authority.

54. Plaintiff further alleges that the Doe officers contacted, communicated with, or exerted influence over National Auto Group or Mohammed Elissa concerning efforts to entrap Plaintiff in a fraudulent retail sales contract, and to deny him his refund.

55. Plaintiff alleges that an Internal Affairs investigator or person acting with Internal Affairs told, encouraged, or induced the dealership to entrap Plaintiff and not to refund Plaintiff's money. Plaintiff claims HPD IAD uses third parties to participate in a Cat's Paw legal practice to retaliate against Plaintiff based on IAD stigma plus smear conspiracy in violation of 1983 equal protection clause under color of law.

56. The alleged police intervention had no legitimate law-enforcement purpose and was substantially motivated by Plaintiff's lawsuits, complaints, records requests, and public criticism.

57. The private Defendants knew or understood that the governmental participants were using their official positions, authority, information, or influence and nevertheless became willing

participants in the challenged conduct, Ellisa Mohammed, National Auto Group, and Credit Acceptance Corp.

58. The common objective was to criminally frame plaintiff, impose economic injury, create or maintain a fraudulent contract, retain Plaintiff's payment as a reward for participating in an illegal contract transaction, damage his credit, and deter or punish him for his ongoing protected petitioning activity by using the fraudulent retail sales contract to deter him from further litigation.

59. The agreement and joint action may be inferred from the timing of the communications, the dealership's refusal to refund despite prompt rejection, the insertion of the false down-payment figure, Credit Acceptance's acceptance and continued enforcement of the contract, the police refusal or obstruction concerning Plaintiff's theft complaint against Elissa Mohammed, and the denial of Defendants' possession of records unavailable to Plaintiff in small claims court.

60. Plaintiff reported the alleged theft, fraud, or contract falsification to HPD and requested a legitimate investigation.

61. HPD personnel declined, obstructed, or failed to provide the ordinary investigative response while, according to Plaintiff, affirmatively assisting or protecting the private actors.

62. Plaintiff alleges that similarly situated persons who report theft of a down payment, falsification of a retail installment contract, or fraudulent use of their identity ordinarily receive an incident report, evidence preservation, witness interviews, referral, or other neutral police response.

63. Plaintiff was intentionally treated differently because of race and because Defendants desired to prevent, burden, or retaliate against his exercise of his first amendment constitutional rights.

64. Plaintiff is not relying solely on negligent inaction. He alleges intentional selective non-enforcement combined with affirmative retaliatory intervention in favor of the private actors as a qui pro quod exchange, i.e. criminally framing plaintiff in exchange for participant's remuneration.

65. The City had actual or constructive notice of the alleged pattern through Plaintiff's earlier lawsuits, Internal Affairs complaints, open-records requests, reports to policymakers, and repeated allegations that Internal Affairs personnel used surveillance or third-party economic interference against him. The City ratified this conduct, customs, policies, and practices.

66. On May 31, 2018, a City or HPD letter stated that a criminal investigation involving wiretaps or pen registers had occurred. Plaintiff later obtained City information in 2026 stating that no such criminal investigation, wiretap, or Internal Affairs file existed. Plaintiff alleges that this contradiction supports an inference of record manipulation, concealment, or an unofficial surveillance practice.

67. Plaintiff alleges a persistent municipal custom of permitting Internal Affairs personnel to use confidential information, unauthorized surveillance methods, third-party contacts, selective non-enforcement, and concealment to retaliate against disfavored complainants or litigants.

68. Final policymakers or officials with delegated authority knew of the alleged conduct by documented practices within plaintiff's IAD records and failed to stop, investigate, discipline, disclose, or correct it, thereby ratifying or maintaining the custom.

69. On December 25, 2024, Plaintiff delivered written notice of Texas Deceptive Trade Practices Act claims to National Auto Group and Credit Acceptance through their counsel, describing the false down payment, nondisclosures, misapplication of funds, fraudulent contract, damages, and demanded relief.

70. On March 6, 2026, Plaintiff delivered an additional detailed statutory notice to Credit Acceptance under Texas Business and Commerce Code Section 17.505 concerning the fraudulent contract, repossession reporting, one-thousand-dollar loss, and related damages.

71. More than sixty days have elapsed since those notices. Defendants did not provide the requested rescission, refund, credit deletion, cancellation, or reasonable settlement response.

72. Plaintiff has suffered loss of one thousand dollars, transportation and replacement-vehicle expenses, damage to credit and financial opportunities, consequential economic losses, emotional distress, reputational injury, employment opportunity injury, constitutional injury, and other damages to be proven. Plaintiff seeks no duplicate satisfaction for any transaction loss recovered in the pending justice-court action.

## VI. COUNT ONE - FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. SECTION 1983

73. Plaintiff incorporates all preceding paragraphs.

74. Plaintiff engaged in constitutionally protected activity by filing lawsuits, complaints, petitions, records requests, and public criticism concerning the City of Houston and HPD personnel.

75. The Doe officers' alleged surveillance, disclosure or exploitation of private communications, intervention with the dealership, inducement to retain Plaintiff's money, selective obstruction of investigation, and concealment would deter a person of ordinary firmness from continuing to petition or speak.

76. The protected activity was a substantial or motivating factor because the challenged acts were allegedly directed at Plaintiff due to his pending litigation and criticism of police and

judicial misconduct. Plaintiff has sought adversarial testing of his claims rather than 12(b)(6) dismissal at pleading stage.

77. A private-citizen retaliation claim requires protected activity, an injury that would chill a person of ordinary firmness, and adverse action substantially motivated by the protected conduct. Amanda Culbertson v. Pat Lykos, 790 F.3d 608 (5th Cir. 2015).

78. The Doe officers acted under color of state law. National Auto Group, Mohammed Elissa, and Credit Acceptance are liable under Section 1983 to the extent discovery proves they knowingly joined, agreed with, or became willing participants in the state actors' retaliation.

79. The City is liable because the retaliation was caused or facilitated by an official policy, persistent custom, ratification, or deliberate indifference that was the moving force of Plaintiff's injury. Plaintiff claims that the City of Houston had constructive knowledge of IAD investigators misconduct because said misconduct is contained in plaintiff's IAD records, which the City of Houston continues to deny him.

80. Plaintiff seeks compensatory damages, nominal damages, punitive damages against the individual and private Defendants where legally available, and declaratory and injunctive relief. Plaintiff does not seek punitive damages against the City.

## VII. COUNT TWO - FOURTEENTH AMENDMENT EQUAL PROTECTION AND SELECTIVE NON-ENFORCEMENT UNDER 42 U.S.C. SECTION 1983

81. Plaintiff incorporates all preceding paragraphs.

82. The Equal Protection Clause prohibits intentional selective enforcement or selective denial of police services motivated by race or by a desire to prevent the exercise of a constitutional right.

83. A State may not selectively deny protective services to a disfavored minority, although the Constitution does not create a general right to police protection from private misconduct. Beltran v. City of El Paso, 367 F.3d 299 (5th Cir. 2004).

84. Selective enforcement is actionable when motivated by improper considerations such as race or a desire to prevent the exercise of a constitutional right. Bryan v. City of Madison, 213 F.3d 267 (5th Cir. 2000).

85. Plaintiff alleges that HPD routinely investigates comparable theft, fraud, identity misuse, and falsified-contract complaints but intentionally denied him neutral service while affirmatively favoring the private Defendants.

86. The differential treatment was motivated by Plaintiff's race and protected petitioning activity and lacked a legitimate governmental purpose.

87. The selective treatment directly caused the loss or continued retention of Plaintiff's funds, impaired his ability to preserve evidence and identify the private-government communications, facilitated continued enforcement of the false contract, increased his credit and financial injuries, and concealed IAD records which supported that plaintiff was being treated differently.

88. The City is liable because the discriminatory treatment was caused by the policy or custom alleged above, known to policymakers, and was the moving force of the constitutional deprivation. Pineda v. City of Houston, 291 F.3d 325 (5th Cir. 2002).

## VIII. COUNT THREE - SECTION 1983 CONSPIRACY AND JOINT ACTION

89. Plaintiff incorporates all preceding paragraphs.

90. The Doe officers and the private Defendants reached an express or tacit understanding to conceal and or use of the official portfolio information, to influence, to engage in selective non-enforcement of police investigative services, use of contract falsification, dealer funding, to

retain Plaintiff's payment, and use negative credit reporting of an auto repossession in violation of the Consumer Protection Act, 15 USC 1691(a)(3); the Truth in Lending Act, the Equal Credit Opportunity Act, and the Fair Credit Reporting Act to inflict economic injury and retaliate against Plaintiff.

91. The defendants/conspirators committed overt acts including monitoring or exploiting communications, contacting or influencing the dealership, refusing the refund, inserting or accepting the false down-payment figure to calculate vehicle financing, transmitting and funding the contract based on a false down payment, treating the rejected vehicle as repossessed, furnishing derogatory credit information, declining neutral investigation, concealing IAD and investigative records, and concealing corporate down payment communications and identities.

92. To satisfy the joint-action test, a complaint must allege facts showing an agreement or meeting of the minds and that the private actor was a willing participant in joint activity with the State. Hernandez v. Causey, 124 F.4th 325 (5th Cir. 2024). The concealment of the Portfolio Program down payment plan satisfies this requirement.

93. The agreement need not be written and may be proven through circumstantial evidence, coordinated conduct, communications, shared objectives, and the sequence of events.

94. The conspiracy deprived Plaintiff of First Amendment and Equal Protection rights and caused the damages described above.

95. Each participant is responsible for the foreseeable injuries caused by acts taken in furtherance of the conspiracy, subject to proof and applicable law.

## IX. COUNT FOUR - RACE-BASED CONSPIRACY UNDER 42 U.S.C. SECTION 1985(3), PLEADED IN THE ALTERNATIVE

96. Plaintiff incorporates all preceding paragraphs.

97. Two or more Defendants conspired for the purpose of depriving Plaintiff, directly or indirectly, of equal protection and equal privileges and immunities under law.

98. The conspiracy was motivated, at least in part, by racial animus against Plaintiff as an African-American and by hostility toward his exercise of civil-rights petitioning activity.

99. Defendants committed overt acts in furtherance of the conspiracy and caused injury to Plaintiff's reputation and employment opportunities, stigma plus claims, property, credit, contractual rights, and constitutional rights.

100. The Fifth Circuit requires a race-based conspiracy for a Section 1985(3) claim and does not treat merely commercial animus as sufficient. Bryan v. City of Madison, 213 F.3d 267 (5th Cir. 2000).

101. This count is pleaded in the alternative and is subject to amendment after discovery of the communications, participants, and discriminatory motive.

## X. COUNT FIVE - TEXAS DECEPTIVE TRADE PRACTICES ACT AGAINST CREDIT ACCEPTANCE CORPORATION

102. Plaintiff incorporates all preceding paragraphs.

103. Plaintiff is a consumer under Texas Business and Commerce Code Section 17.45(4) because his objective was to acquire a used motor vehicle and the related financing formed the means of completing that purchase. The extension of credit was incident to the sale of the vehicle rather than a stand-alone request for money.

104. Credit Acceptance had a direct connection with the sales transaction by maintaining the dealer-financing program, providing or agreeing to provide the dealer advance, accepting or acquiring the retail installment contract, administering the alleged account, and asserting rights arising from the disputed transaction.

105. Plaintiff does not rely solely on Credit Acceptance's innocent status as a lender or assignee. Plaintiff alleges Credit Acceptance committed its own deceptive and unconscionable acts after it received direct notice that the contract falsely represented a $2, 500.00 dollar down payment, that Plaintiff had paid only one thousand dollars. The defective vehicle was promptly returned.

106. Credit Acceptance directly violated the DTPA by representing and continuing to represent that the disputed agreement conferred enforceable rights, remedies, or obligations that the contract did not lawfully confer; by continuing to enforce and reporting a repossession based on a materially false contract after actually being notified by plaintiff; by failing to disclose material information within its dealer-funding and servicing records concerning the actual down payment and dealer proceeds; and by engaging in an unconscionable course of action that took advantage of Plaintiff's lack of access to Portfolio Auto Program information by Credit Acceptance Corp.

107. Credit Acceptance possessed or controlled the dealer funding statement, underwriting and verification records, dealer servicing agreement, transaction notes, communications, call recordings, repossession records, and credit-furnishing records necessary to determine whether the contract accurately reflected the condition of the vehicle and the one thousand dollar payment requested as a refund after notification.

108. Credit Acceptance's direct conduct was a producing cause of continuing economic injury, including the continued repossession tradeline, impairment of credit, violation of truth in lending act, violation of federal credit reporting act, increased financing costs, lost financial opportunities, and expenses incurred after Credit Acceptance received notice and an opportunity to correct the transaction.

109. Direct DTPA liability based on Credit Acceptance's own deceptive or unconscionable acts is separate from derivative Holder Rule liability and is not limited by the Holder Rule cap if the required elements and damages are proven.

110. In addition, the fraudulent retail installment contract was the factual predicate for Credit Acceptance Corp. 's violations. The contract was legally required to include the notice prescribed by 16 C.F.R. Section 433.2. As holder or assignee, Credit Acceptance is therefore subject to the claims and defenses Plaintiff could assert against the seller. Any affirmative monetary recovery based solely on derivative Holder Rule liability is limited to amounts paid by Plaintiff under the contract, without limiting cancellation, defensive relief, or independently proven direct liability.

111. Plaintiff delivered written DTPA notices on December 25, 2024, and March 6, 2026, described the false contract and down payment, defective and rejected vehicle, retained payment, repossession reporting, and demanded relief, and allowed more than sixty days for resolution. Plaintiff seeks economic damages, mental-anguish damages upon the required proof, additional punitive damages for knowing or intentional conduct, costs, and equitable relief, subject to the one-satisfaction rule.

## XI. COUNT SIX - DECLARATORY RELIEF, RESCISSION, CANCELLATION, AND HOLDER RULE RELIEF AGAINST CREDIT ACCEPTANCE CORPORATION

112. Plaintiff incorporates all preceding paragraphs.

113. An actual controversy exists between Plaintiff and Credit Acceptance concerning whether the retail installment contract is valid, whether the dealer actually submitted the Form 130-U and transferred title, Texas certificate of title history from TxDMV, Odometer disclosure statement,

Credit Acceptance funding or dealer participation records showing what amounts were paid to the dealer, repossession notices and notice of vehicle sale, whether Plaintiff owes any balance, whether the vehicle was lawfully treated as repossessed, and whether Credit Acceptance may continue collection or credit reporting based on the disputed documents.

114. The contract does not reflect Plaintiff's actual agreement because he never agreed to or paid a $2,500.00 down payment, promptly rejected the defective vehicle, and demanded return of his one-thousand-dollar payment.

115. The contract was procured through alleged seller fraud and material misrepresentation. Under the Holder Rule, Credit Acceptance took the contract subject to the claims and defenses Plaintiff could assert against National Auto Group and Mohammed Elissa, subject to the applicable limitation on derivative monetary recovery.

116. Plaintiff seeks a declaration under 28 U.S.C. Sections 2201 and 2202 that the contract is void or voidable, that no deficiency or repossession obligation is enforceable against him, and that Credit Acceptance lacks a lawful basis to continue enforcing or reporting the transaction.

117. Plaintiff seeks rescission or cancellation of the alleged obligation, correction or deletion of the repossession tradeline, cessation of collection activity, and restoration of the parties to their lawful pre-transaction positions to the extent equitable relief is available.

118. Plaintiff does not seek to recover from Credit Acceptance any transaction loss already recovered in the pending justice-court action. Any overlapping recovery shall be credited or offset, while separate damages caused by Credit Acceptance's own post-notice conduct remain independently recoverable if proven.

119. Plaintiff seeks all further declaratory and equitable relief necessary to make the judgment effective.

## XII. PENDING JUSTICE-COURT ACTION AGAINST NATIONAL AUTO GROUP AND MOHAMMED ELISSA

120. Plaintiff presently has a pending small-claims action in the Justice Court of Harris County, Texas, Precinct 4, Place 1, Cause No. 24410034420, against National Auto Group, LLC and Mohammed Elissa or Elissa Mohammed.

121. The justice-court action asserts conversion, breach of contract, common-law fraud, and unjust enrichment arising from the one-thousand-dollar payment, the disputed vehicle transaction, and the refusal to provide a refund.

122. The justice-court action does not name the City of Houston, the Doe HPD Internal Affairs officers, or Credit Acceptance Corporation and does not request adjudication of the First Amendment retaliation, Fourteenth Amendment equal-protection, Section 1983 joint-action, municipal-liability, or Credit Acceptance post-notice DTPA claims asserted here.

123. Plaintiff discloses the justice-court action to prevent inconsistent factual positions and will promptly notify this Court of any material ruling, settlement, recovery, dismissal, or final judgment in that proceeding.

124. Plaintiff does not ask this Court to review, reverse, enjoin, or otherwise interfere with the justice court. The federal claims seek relief for different defendants, different legal duties, and constitutional and post-notice injuries that the justice-court action cannot fully adjudicate.

## XIII. COUNT SEVEN 42 USC 1983-FOURTEENTH AMENDMENT DUE PROCESS, FIRST AMENDMENT RETALIATION, EQUAL PROTECTION, AND DENIAL OF ACCESS TO THE COURTS THROUGH CONCEALMENT OF MATERIAL GOVERNMENT RECORDS AS AN ONGOING CONSTITUTIONAL VIOLATIONS

125. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

126. Defendants, acting under color of state law, intentionally concealed and refused to disclose Plaintiff's internal affairs records despite Plaintiff's repeated requests and despite the records being material to Plaintiff's constitutional claims.

127. Plaintiff alleges that unknown IAD investigators unlawfully utilized electronic surveillance, including pen registers, without lawful authorization, and thereafter used information obtained from that surveillance to influence or interfere with criminal investigations involving Plaintiff, including the refusal to investigate Plaintiff's theft and conversion complaints.

128. Plaintiff further alleges that Defendants' refusal to produce the underlying IAD investigative records was not merely an administrative records dispute, but constituted deliberate concealment of evidence material to prove the existence, scope, authorization, and purpose of the surveillance activities.

129. The concealed records are uniquely within Defendants' possession and control and constitute the principle evidence capable of confirming or disproving Plaintiff's allegations regarding unlawful surveillance, retaliatory law enforcement practices, and selective non-enforcement of criminal laws.

130. By concealing these records, Defendants deprived Plaintiff of a meaningful opportunity to conduct discovery, present evidence, and obtain adversarial testing of disputed facts before an impartial tribunal.

131. The concealment substantially impaired Plaintiff's constitutional right of access to the courts by preventing Plaintiff from obtaining evidence necessary to prosecute his federal civil rights claims and challenge Defendants' asserted justifications for their conduct.

132. Descendants' action further deprived Plaintiff of procedural due process because the material factual disputes concerning the existence and use of IAD investigative records were intentionally insulated from judicial review through concealment rather than resolved through adversarial process.

133. Plaintiff further alleges that Defendants selectively denied Plaintiff the protection of law by refusing to investigate his theft and conversion complaints while using concealed investigative information concerning Plaintiff for retaliatory purposes, thereby violating Equal Protection Clause.

134. The concealment was undertaken in retaliation for Plaintiff's protective activity, including his complaints, litigation, public records request, and efforts to expose government misconduct, in violation of the First Amendment.

135. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the denial of equal law enforcement services, deprivation of procedural due process, impairment of his constitutional right of access to the courts, damage to his reputation, denial of employment, financial losses, emotional distress, litigation expenses, and continuing constitutional injury.

136. Defendants acted intentionally, willfully, maliciously, or with deliberate indifference to Plaintiff's clearly established constitutional rights, entitling Plaintiff to compensatory damages, punitive damages against the individual defendants were permitted by law, declaratory relief, injunctive relief compelling production of the concealed records, costs, and all other relief the Court deems just and proper.

## IX. ELECTION OF REMEDIES AND NO DUPLICATE RECOVERY

137. Plaintiff reserves the independent state-law causes of action for conversion, breach of contract, common-law fraud, and unjust enrichment against National Auto Group and Mohammed Elissa to the pending justice-court action and does not reassert those causes of action as separate counts in this complaint.

138. National Auto Group and Mohammed Elissa remain Defendants here only for the federal civil-rights claims based on alleged joint action or conspiracy with HPD officers, related declaratory or prospective relief, and any relief that is legally distinct from the recovery sought in justice court.

139. The one-thousand-dollar payment, transportation expenses, and other transaction losses may be relevant evidence of injury and causation in both proceedings, but Plaintiff seeks only one satisfaction for each injury. Any amount recovered for the same injury in justice court shall be disclosed and credited against an overlapping federal award.

140 . Separate injuries are not duplicative, including retaliatory surveillance or misuse of IAD or investigative information, mental health information, or domestic violence information, selective denial of police services, constitutional injury, concealment, and additional credit and financial harm caused by Credit Acceptance's conduct after receiving statutory notice.

141. Plaintiff requests that any coordination needed because of the pending justice-court action be limited to preventing double recovery or inconsistent relief and not be used to dismiss or surrender jurisdiction over the distinct federal constitutional and Credit Acceptance claims.

## XIV. MUNICIPAL LIABILITY

142. Plaintiff incorporates all preceding paragraphs.

143. The City's liability is based on one or more of the following: an officially adopted policy; a persistent and widespread custom of retaliatory surveillance, misuse of confidential information, selective non-enforcement, third-party interference, and IAD record concealment and adversarial testing of disputed IAD records; decisions or ratification by final policymakers; and deliberate indifference to known constitutional violations.

144. The alleged custom was sufficiently persistent and widespread to constitute municipal policy and was known actually or constructively to officials responsible for HPD and Internal Affairs.

145. The policy or custom was the moving force behind the Doe officers' retaliation, discriminatory treatment, joint action with private Defendants, and resulting injury.

146. Plaintiff requests discovery concerning prior similar complaints, Internal Affairs access logs, pen-register or surveillance requests, communications with private creditors and dealers, disciplinary history, open-records instructions, policymaker notices, and the identity and supervision of the Doe officers.

## XV. DAMAGES

147. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the loss of his one-thousand-dollar payment; rideshare and transportation expenses; replacement-vehicle and financing expenses to the extent recoverable; impairment of credit; denial or increased cost of

credit; mortgage equity loans denied, inability to use credit or home equity on favorable terms; reputational injury; loss of employment opportunities, emotional distress; ongoing equal protection under the law constitutional injury based on continuous concealment of IAD records being denied adversarial testing; and other consequential economic damages, i.e. $16, 500 repossession placed on credit report. Any amount recovered in justice court for the same transaction loss shall be disclosed and credited, but separate constitutional and post-notice injuries remain independently recoverable.

148. Plaintiff seeks nominal damages for completed constitutional violations even if a specific compensatory amount cannot be established.

149. Plaintiff seeks punitive or exemplary damages against the Doe officers and private Defendants upon the required proof of evil motive, reckless indifference, fraud, malice, or gross misconduct. Plaintiff does not seek punitive damages against the City of Houston. Plaintiff alleges that the City of Houston is liable through its policymakers, the Houston Police Department, the Internal Affairs Division Investigators, and the City Attorney, Auturo Michels, maintained policies, customs, practices, and ratified conduct that deprived Plaintiff of rights secured by the First and Fourteenth Amendments by recruiting private citizens and companies to treat him differently by retaliating and discriminating against him for engaging in protective activity that exposed police and judicial misconduct.

150. Plaintiff seeks statutory additional damages under the DTPA only to the extent authorized by the findings and proof at trial.

151. Plaintiff reserves the right to amend the damages calculation after obtaining the dealer funding statement, credit reporting history, lending denials, replacement-vehicle records, police

and dealer communications, and other discovery, and after accounting for any recovery or denial of recovery in the pending justice-court action.

## XVI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that Defendants be cited to appear and answer and that, after trial, the Court enter judgment:

A. For compensatory, nominal, statutory, and consequential damages in an amount determined by the jury;

B. For restitution from Credit Acceptance to the extent permitted by its direct liability or the Holder Rule, and for other recoverable out-of-pocket losses, subject to a credit for any recovery of the same loss in justice court;

C. For economic, mental-anguish, and additional damages against Credit Acceptance under the Texas Deceptive Trade Practices Act upon the required findings, with derivative Holder Rule recovery limited as required by law;

D. For punitive or exemplary damages against the individual and private Defendants where permitted by law, but not against the City of Houston;

E. Declaring the retail installment contract void or voidable and unenforceable against Plaintiff and declaring that Credit Acceptance has no lawful deficiency or repossession claim based on that contract;

F. Ordering rescission or cancellation of the alleged obligation, cancellation of any deficiency, correction or deletion of the repossession tradeline, and cessation of collection or enforcement based on the disputed contract, without duplicating relief obtained in justice court;

G. Ordering preservation and production of the relevant dealer funding records, communications, call recordings, police IAD records, access logs, surveillance records, and

credit furnishing records; and allowing all IAD records under Texas Government Code 552.023 and 614.023 to be subject to adversarial testing rather than a print out with no names or content in order to have a fair adjudication of his claims.

H. For appropriate prospective injunctive relief preventing retaliation, unauthorized surveillance, discriminatory denial of services, and further enforcement or reporting of the disputed transaction;

I. For pre-judgment and post-judgment interest as allowed by law;

J. For taxable court costs; and

K. For all other legal and equitable relief to which Plaintiff may be entitled, subject to the one-satisfaction rule and disclosure of any justice-court recovery.

**XVII. JURY DEMAND**

152. Plaintiff demands a trial by jury on every issue so triable.

Respectfully,

John E. Hall

17818 Running Brook LN
Spring, Tx. 77379
Email: Jayearl2007@yahoo.com

## PLAINTIFF CONTACT INFORMATION

John E. Hall

17818 Running Brook Ln

Spring, Texas 77379

Email: Jayearl2007@yahoo.com

## CERTIFICATE OF SERVICE - TO BE COMPLETED AFTER SERVICE

I certify that on ____________________, after issuance of summonses, a true and correct copy of this Complaint and the appropriate summons was served in accordance with Federal Rule of Civil Procedure 4 upon each Defendant or authorized agent by the following method(s): ________________________________________________.

Service recipients and known addresses from Plaintiff's prior records:

City of Houston, through Mayor John Whitmire: 901 Bagby Street, Houston, Texas 77002.

John Doe HPD Internal Affairs Officers 1-5, after identification, c/o Houston Police Department: 1200 Travis Street, Houston, Texas 77002. Individual service addresses shall be supplemented after identification.

National Auto Group, LLC and Mohammed Elissa, also known as Elissa Mohammed: 6427 Washington Avenue, Houston, Texas 77007. Prior records also identify a represented business location at 2218 North Loop West, Houston, Texas 77018.

Credit Acceptance Corporation, through Kenneth S. Booth, President and Chief Executive Officer: 25505 West Twelve Mile Road, Southfield, Michigan 48034.